UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| VICKIE LYNN ARCHIE, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) No. 1:13-cv-00903-SEB-MJD |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Vicki Archie requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED.**

### I. Procedural History

Archie filed applications for DIB and SSI on March 17, 2011 alleging an onset of disability of May 10, 2009. Archie's applications were denied initially and on reconsideration. Archie requested a hearing which was held on February 14, 2012 before Administrative Law Judge Joseph Brinkley ("ALJ"). The ALJ denied Archie's applications on March 9, 2012. The Appeals Council denied Archie's request for review on April 23, 2013, making the ALJ's decision the final decision for purposes of review. Archie filed her Complaint on June 5, 2013.

## II. Factual Background and Medical History

Vicki Archie was 49 years old on the alleged onset date of disability. She has past relevant work as a sorter, production worker, food delivery person, and a jewelry sales person. [R. at 40-41.] She asserts disability due to back pain, compression fracture, osteoporosis and scoliosis.

Ms. Archie has had back issues since at least 2006 when she sought treatment at St. Vincent Family Medicine ("St. Vincent"). [R. at 215.] Treatment visits indicated that Ms. Archie suffered from compression fracture of the thoracic vertebral body. [R. at 197.] In 2008, she had begun physical therapy, but asserted that it was not making a difference. [R. at 186.] By January 2009, she had been diagnosed with osteoporosis. [R. at 183.]

The medical record jumps to April 2011 when Ms. Archie had a consultative examination with Dr. Ibrar Paracha. [R. at 241-43.] Dr. Paracha found that Ms. Archie had a normal gait, was able to do heel and toe walking without difficulty, had no difficulty squatting, and had normal range of motion. [R. at 242-43.] Dr. Paracha reported a normal physical exam except for thoracic spinal tenderness to palpation. [R. at 243.] It was Dr. Paracha's opinion that the only limitation Ms. Archie would have is difficulty lifting more than 15 pounds at a time or doing extensive strenuous activity involving the upper extremities. [*Id*.]

In April 2011, Dr. J. Eskogen of the Disability Determination Bureau ("state agency") reviewed the record and opined that Ms. Archie did not have a severe physical impairment. [R. at 246.] This assessment was affirmed by state agency physician Dr. Robert Bond in May 2011.

Ms. Archie continued treatment visits with doctors at St. Vincent in July 2011. [R. at 249-71.] At that visit, Ms. Archie rated her back pain at 3-4 out of 10 at its worst. [R. at 265.] Results of a July 2011 x-ray revealed compression deformity at T8 with approximately 80% loss of anterior vertebral body heights and the presence of mild scoliosis [R. at 270.] Dr. Paracha also

ordered x-rays which revealed wedge compression deformity at T8 along with gentle thoracic scoliosis. [R. at 244.]

Ms. Archie sought treatment at St. Vincent in September 2011 for continued back pain. [R. 262-64.] Dr. Timothy Von Fange reported that Ms. Archie was to return to physical therapy, but had not yet started because she had not heard from scheduling. [R. at 262.] He placed another referral for physical therapy as well as prescribed medication to treat osteoporosis and the compression fracture. [R. at 264.]

In December 2011, Dr. Cathy Bryant noted that Ms. Archie's pain was well controlled with prescribed medication. [R. at 254]

In January 2012, Dr. Elizabeth Brauchla of St. Vincent wrote a letter stating that Ms. Archie is attending physical therapy three times per week, but still has continued pain rated at 8 out of 10. [R. at 251.] In the letter, Dr. Brauchla noted that Ms. Archie reported that her pain is keeping her from being able to do things. [*Id*.]

Ms. Archie returned to St. Vincent in February 2012. [R. at 293.] She had completed physical therapy without improvement of pain. [*Id*.] Ms. Archie reported that her medication takes her pain down from an 8 to a 7. [*Id*.] Exam revealed normal motor strength, normal gait, normal movements of all extremities, and normal muscle strength and tone.

At the hearing, Ms. Archie testified that she spends 23 hours of the day in bed and gets up only to use the bathroom and to eat. [R. at 37.] She lives alone in a one-story house with a basement and uses the stairs. [R. at 32-33.] Ms. Archie testified that she can sit for no more than an hour, then needs to lie down. [R. at 35.] She can also stand for 2-3 hours at a time and walk 3-4 hours. [Id.] Ms. Archie testified that walking helps and is better than sitting or standing. [Id.] She asserted that she could only lift 10 pounds and did light cleaning, but not very often. [R. at

36.] When she cleaned, she could only do it for 10 or 15 minutes at a time, then would have to take a break for 3-4 minutes. [R. at 37.] Ms. Archie further testified that her back pain wakes her up at night and would therefore make her sleepy during the day. [R. at 39.]

### III. Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[1] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

4

month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate hia analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV. The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Ms. Archie had not engaged in substantial gainful activity since May 10, 2009, the alleged onset date. At step two, the ALJ found that Ms. Archie had the following severe impairments: osteoporosis, compression deformity of the thoracic spine, and back pain.

5

At step three, the ALJ determined that Ms. Archie did not have an impairment or combination of impairments that meets or medically equals any impairment in the Listing of Impairments.

Next, the ALJ found that Ms. Archie had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that Ms. Archie

> Can sit 1 hour at a time, stand 2 hours at a time, and walk 4 hours at a time, in addition to regularly scheduled breaks; can lift/carry 15 pounds frequently and 15 pounds occasionally; can never crawl or climb ladders/ropes/scaffolds; can occasionally stoop, squat crouch, and climb stairs/ramps; must avoid concentrated exposure to extreme changes in temperature, wetness, humidity, vibrations, and workplace hazards including dangerous machinery and unprotected heights.

[R. at 20.]

At step four, the ALJ determined that Ms. Archie was capable of performing her past relevant work as a jewelry salesperson. Thus, the ALJ determined that Ms.Archie was not disabled.

## V. **Discussion**

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Archie was not disabled. *Dixon*, 270 F.3d at 1176. Ms. Archie was represented by an attorney at the hearing, however, she is a pro se Plaintiff in these proceedings for judicial review. In her brief, Ms. Archie directs the Court to several alleged inconsistencies in the ALJ's decision. The Court will address each of Ms. Archie's concerns below.

Ms. Archie first asserts that there was some miscommunication between her and the ALJ during her hearing testimony. In response to questions about her ability to walk,[2] Ms. Archie

---
[2] Ms. Archie states that the questions were asked by the ALJ, but they were asked by her attorney. [R. at 34-38.]

responded that walking "kind of helps" her pain and that she can walk 3-4 hours because it is better than just sitting or standing. [R. at 35.] In her brief, Ms. Archie appears to clarify her previous statements with regard to walking and emphasized that lying down is what is best for her condition, especially to recuperate from a lot of walking. [Dkt. 18 at 2.] Presumably, this is in response to the ALJ's finding that her statements on this point are inconsistent. [R. at 21.]

The Court first notes that Ms. Archie cannot on appeal articulate any facts not found in the administrative record without markshowing good cause. 42 U.S.C. § 405(g). Furthermore, the Court does not believe Ms. Archie's sentiments were lost upon the ALJ. Ms. Archie emphasized her need to lie down at the hearing, [R. at 35, 37, 42], and such was communicated by the ALJ in his decision [R. at 21].

Next, Ms. Archie directs the Court to the ALJ's statement that "[t]he claimant rated her back pain at a 3-4 at worst." [R. at 21.] Ms. Archie's brief states that she does not remember rating her pain that low. [Dkt. 18 at 2.] However, the ALJ's statement was taken from a July 2011 treatment visit where she reported to her examining physician that her pain was a 3-4 out of 10 at worst. [R. at 265.] The ALJ also noted that Ms. Archie reported her pain level to be at 8 out of 10 in a January 2012 letter from Dr. Brauchla as well as a February 2012 treatment visit. [R. at 22, 251, 296.]

Ms. Archie also points out that at her September 19, 2011 visit with Dr. Von Fange, they discussed her going back to physical therapy and Ms. Archie states that she complied. [Dkt. 18 at 2.] This is likely in response to the ALJ's characterization of the September 2011 treatment visit in which the ALJ noted that "[Ms. Archie] had not started physical therapy as had been recommended." [R. at 21-22.] Dr. Von Fange's treatment note indicated that Ms. Archie had not started physical therapy because she did not hear from scheduling and Dr. Von Fange would

7

place another referral for physical therapy. [R. at 262-64.] The record also indicates that Ms. Archie did in fact begin physical therapy and Dr. Amy LaHood commented in her report on Ms. Archie's February 2012 visit that Ms. Archie completed physical therapy with no improvement of her pain. [R. at 293.] While the ALJ did not expressly mention that Ms. Archie complied with Dr. Von Fange's recommendation to attend physical therapy and did not mention that she completed it, the ALJ cited in the decision to Dr. LaHood's notes that provide that information, staing that Ms. Archie reported "that therapy had not helped." [R. at 22.]

The above concerns raised by Ms. Archie all relate to the ALJ's determination of Ms. Archie's credibility. An ALJ's credibility determination can be overturned only if it is "patently wrong," meaning that it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). The Court finds that the ALJ's determination regarding Ms. Archie's credibility is reasoned and supported. The ALJ's credibility determination was based on Ms. Archie's testimony and reports to her examining physicians. Accordingly, the Court finds that the ALJ did not err here. Furthermore, any error that the ALJ may have committed is harmless as the Court is not convinced that the ALJ's decision would change if the case were remanded.[3]

Ms. Archie next raises arguments pertaining to the testimony of the vocational expert; in other words, Ms. Archie challenges the ALJ's step four determination. The ALJ and Ms. Archie's attorney posed a series of hypothetical questions to the vocational expert. [R. at 46-49.] The first hypothetical involved a person similar to Ms. Archie with the limitations spelled out in the above RFC. In response to the first hypothetical, the vocational expert replied that such a person could perform her past relevant work doing jewelry sales as it is customarily done in the national labor market. [R. at 47.] However, in the remaining hypotheticals with further

---

[3] Ms. Archie also notes that her height is 5'2", not 5'10" as noted in the hearing transcript. Her height does not appear to have any bearing on the ALJ's decision.

limitations, the vocational expert testified that there would be no jobs that the hypothetical person could perform. [R. at 48-49.] It was the vocational expert's opinion that if the individual were further limited to not being able to spend a minimum of 30 minutes in a given position (sitting, standing, walking), then that would exclude all jobs. [R. at 48.] The vocational expert further testified that, if the individual were limited in addition to the first hypothetical to needing to take an extended break during the first half of the day and lie down for 30-45 minutes in the second half of the day, there would not be any jobs available. [R. at 49.] Ms. Archie's attorney asked in a completely separate hypothetical, if the individual could only perform sedentary work and was limited to simple, routine, repetitive jobs, could that person perform her past relevant work or would she have any transferable skills. [*Id*.] The vocational expert replied no to both aspects of the question. [*Id*.]

However, none of the additional limitations were adopted in the RFC. The Court's review of the record indicates that there isn't support for the additional limitations. For example, there is no support that Ms. Archie needs a limitation that she cannot be in a given position for 30 minutes at a time. While she testified that she spends most of the day in bed, she also testified that she can sit up to an hour, stand 2-3 hours and walk 3-4 hours. There is also nothing in the record to suggest extended breaks beyond what was provided in the RFC, nor that Ms. Archie would be limited to simple, routine, repetitive jobs. Dr. Paracha is the only doctor who gave an opinion as to Ms. Archie's functional limitations, and Dr. Paracha opined only that Ms. Archie would have difficulty lifting more than 15 pounds at a time or doing extensive strenuous activity involving the upper extremities. [R. at 243.] Accordingly, the ALJ did not err in failing to include these additional restrictions in the RFC and substantial evidence supports the ALJ's determination at step four.

## VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's conclusion that Archie was not disabled. The Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 07/03/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

VICKIE LYNN ARCHIE
4541 Caroline Ave.
Indianapolis, IN 46205

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov